HENRY ALLEN, GEORGE L. ROBERTS AND CONVERSE D. MOODY

*vs.*

PERLEY A. HACKETT, JOSHUA E. CHASE AND EDWARD W. HOLBROOK.

FROST P. BAILEY *vs.* CHARLES K. DURGAN.

JOSEPH P. BAILEY et al. *vs.* GILBERT F. DUNNING et al.

MARGARET B. SKILLINGS *vs.* EDWARD M. PIERCE, In Equity.

Cumberland.    Opinion August 10, 1923.

*A majority of the selectmen may lawfully change the place of holding the annual town meeting.    If the place designated is the only place of that name in the town, the omission to state that the place is in the town is not fatal.    If an attested copy of the warrant is posted in a public and conspicuous place in the town the statute requirement is met.    The acts of a constable de facto in posting an attested copy of the warrant are as valid so far as the public is concerned as though he were an officer de jure.    A return by a constable to the town clerk not required.    The fixing of the time and place of holding town meetings is left to the discretion of the selectmen.    A town meeting called by a justice of the peace without an unreasonable refusal by the selectmen to call a meeting, is illegal.*

In this case because for one hundred years annual meetings had been held in a certain building at Harpswell Center, it does not follow that all future annual meetings must be held there.

The majority of the selectmen could and did lawfully change the place of holding the annual meeting.

The warrant calling the meeting at Red Men's Hall was not defective because it did not state that the Red Men's Hall mentioned was located in the town of Harpswell.    The record shows that there is but one Red Men's Hall in Harpswell, as there is but one Town House in Harpswell.    One is as well known as the other.

There is no legal requirement that an attested copy of the warrant should be posted at the Town House in Harpswell.    The statute requirement is met when the attested copy of the warrant is posted in a public and conspicuous place in that town.

Notice of a change of place of holding the annual meeting was not required to be posted at the Town House in Harpswell, or at any other place than that mentioned in the call for the annual meeting at Red Men's Hall.

Selectmen of towns, being agents for the public, and discharging duties of a municipal character, may act by majorities.

It is sufficient for the purposes of this case that the record discloses that the constable appointed by the two selectmen was in any event an officer de facto. His acts as such de facto officer were, in the instance named, valid acts.

The fixing of the time and place of holding town meetings has been and is a statute duty of the selectmen. Many of the statute duties of selectmen are left to their good judgment and discretion, and these include the naming of the time and place of calling town meetings.

A town meeting, called by a justice of the peace, without an unreasonable refusal by the selectmen to call a meeting, is illegal. The evidence discloses that the selectmen never refused, unreasonably or otherwise, to call a town meeting before they called the meeting at Red Men's Hall. There cannot be an unreasonable refusal without a request.

On appeal. Four actions by petition brought under the provisions of Sec. 87, Chap. 7, of the R. S., authorizing any person claiming to be elected to a municipal office to proceed as in equity, and have his right to the office in question determined by the court. These cases depending on the same facts were tried together. The parties are residents of the town of Harpswell and the controversy arose because a majority of the selectmen changed the place of holding the annual town meeting from the Town House at Harpswell Center to the Red Men's Hall at Orr's Island. A hearing was had upon petition, answer and testimony, and the sitting Justice rendered judgment in favor of each of the petitioners with costs and the respondents appealed. Petition sustained with single bill of costs in each case. Decree of single Justice affirmed.

The case is fully stated in the opinion.

*David E. Moulton and Carroll W. Morrill,* for petitioners.

*Emery G. Wilson,* for respondents.

SITTING: CORNISH, C. J., HANSON, DUNN, MORRILL, WILSON, JJ.

HANSON, J. These petitions are brought under the provisions of Sec. 87, Chap. 7, R. S., and were tried together with the stipulation and agreement that the evidence taken in the first mentioned case shall be used to determine the decision of the other cases as named above.

The petitioners claim that they were respectively elected to the offices of (1) selectman, assessor and overseer of the poor, (2) treasurer, (3) tax collectors, (4) town clerk, of the town of Harpswell for the current year.

After a full hearing, the single Justice ordered and decreed "that the petitioners, Henry Allen, George L. Roberts and Converse D. Moody, were each elected and are each entitled by law to the respective offices claimed by them in their said petition, and judgment is hereby rendered in favor of each of said petitioners, with costs."

The cases are now before us on appeal.

All the parties are residents of the town of Harpswell. The town is composed of a section of mainland, known as Harpswell Neck, nine and one half miles long, with numerous islands on either side. On the west are several small islands occupied by cottagers and permanent residents. On the east are three large islands,—Great Island adjoining the mainland of Brunswick, Orr's Island adjoining the southerly end of Great Island, and Bailey's Island adjoining the southerly end of Orr's Island,—these three large islands making substantially a second neck of land lying parallel to Harpswell Neck proper. The Town House, so called, is located at Harpswell Center, approximately in the center of Harpswell Neck. Until September, 1922, all town meetings had been held in the Town House. The record discloses that the earliest meeting was there held in 1823.

The petitioners Henry Allen and George L. Roberts, together with Perley A. Hackett, one of the respondents, were duly elected and qualified and acting selectmen of the town of Harpswell for the year 1922. As such officers they met at their office in Harpswell on the twenty-first day of February, 1923, for the purpose of calling the annual town meeting. The record discloses that the subjects of the time and place for holding the annual meeting, together with the various details of the town business, were fully discussed, and the warrant was finally prepared on a typewriter by Mr. Hackett in the form as it appears in the record, signed by Henry Allen and George L. Roberts, two of the three named selectmen. Mr. Hackett, the chairman of the board of selectmen, declined to sign, because unwilling to agree with the others to call the annual meeting at Orr's Island, as provided in the warrant. The majority members proceeded with the warrant to the only constable in the town and requested him to post the same, as provided by law. The constable

declining to act, Messrs. Allen and Roberts, acting officially, appointed a constable, who qualified as such, and immediately posted an attested copy of the warrant and made his return thereon in due form. The annual meeting, thus called, was held at Red Men's Hall at Orr's Island, and the petitioners named were there elected to the various offices now claimed by them.

The respondents introduced a petition "to the Selectmen of the Town of Harpswell," signed by twleve legal voters of the town of Harpswell, and dated February 21, 1923, requesting the selectmen to call a meeting of the inhabitants of said town, qualified to vote in town affairs, "to act on such articles as may properly be brought before said meeting, said meeting to be called at the Town House at Harpswell Center in Cumberland County, State of Maine, March 5th at ten o'clock in the morning, and to continue until the business is completed."

It further appears of record that on February 22 the foregoing petitioners presented to Edwin E. Witherby, a justice of the peace, an application in writing as follows: "The undersigned, ten or more legal voters of the town of Harpswell in said county respectfully represent, that on the 22d day of February, 1923, application in writing by ten or more legal voters in said town, to wit, the same whose names are hereto appended, was made to the selectmen thereof, requesting them to call a meeting of the inhabitants of said Town, qualified to vote in town affairs, to act on the following articles, to wit, That Henry Allen and George Roberts, being a majority of said selectmen, unreasonably refused to call such meeting. Therefore the undersigned hereby request you to issue a warrant for calling a meeting of the inhabitants of said town, qualified as aforesaid, to act upon said articles."

The justice of the peace, on the twenty-third day of February, upon the grounds set out in the application, to wit, that the majority of the selectmen had unreasonably refused to call a town meeting, issued his warrant directed to Gilbert F. Dunning, requiring him in the name of the State of Maine, to warn and notify the inhabitants of Harpswell qualified to vote in town affairs to assemble at the Town House in said town on the fifth day of March, 1923, at ten o'clock in the forenoon, to act on the following articles: Then followed substantially the same articles as appear in the call for the annual meeting issued by the selectmen. Under this warrant a meeting

was held at the Town House on Harpswell Neck on March 5, 1923, and the respondents were thereat elected to the respective offices now claimed by them.

The reasons for appeal, in addition to a general objection to the decree of the single Justice, challenge the legality of the warrant, the posting, and return of the same, the qualification of the constable who posted an attested copy of the warrant, and the regularity of the annual meeting in the following particulars:—

1. Because the meeting was not called and held at the Town House where previous annual meetings had been held.

2. Because the place of holding the annual meeting was changed by a majority of the selectmen without cause or authority for so doing.

3. Because the warrant calling the meeting did not state the place of meeting to be in the town of Harpswell.

4. Because said warrant was not posted at the Town House in Harspwell.

5. Because notice of change in the place of holding the annual meeting was not posted at said Town House.

6. Because the warrant was not posted by a duly appointed and qualified constable of said town of Harpswell.

7. Because no return was made to the town clerk by the constable after posting the warrant.

8. Because said meeting was held at a place far distant from the Town House in Harpswell, without any action having been taken by the inhabitants authorizing such change of place.

The objections will be considered in the order named.

1. Because for one hundred years annual meetings had been held in a certain building at Harpswell Center, it does not follow that all future annual meetings must be held there. There might arise at any time a very good reason why meetings should be held elsewhere in the town. The record of the earliest meeting in the Town House shows less than eighty persons present and voting. At the meeting called at Red Men's Hall in September, 1922, and apparently without objection, at least seven hundred people were present. The testimony discloses that the Town House will accommodate about two hundred, while the Red Men's Hall has a very much larger capacity. In the premises the selectmen might well choose the larger building if in their judgment, and acting in good faith, they

should select the larger hall for the purposes of the annual meeting. The departure from the custom of a hundred years began not in February, 1923, but in September, 1922, when for obvious reasons it was necessary to seek a larger audience room to consider the business interests of the town. Augustus Merriam, called by the respondents, testified that the Town House was not at all times large enough for town purposes, especially since women began to take part in town affairs.

2. The majority of the selectmen could and did lawfully change the place of holding the annual meeting.

3. The warrant calling the meeting at Red Men's Hall was not defective because it did not state that the Red Men's Hall mentioned was located in the town of Harpswell. The record shows that there is but one Red Men's Hall in Harpswell, as there is but one Town House in Harpswell. One is as well known as the other. The notice of the meeting called at Red Men's Hall, without further designation, was as effective as one called at "the town house in said town." In the instant case every person in the town of Harpswell knew several days before March 5th, 1923, that two meetings had been called and would be held. The purpose of the warrant was to notify the inhabitants. That it served that purpose cannot from the record be doubted, and no inhabitant of Harpswell could have been misled.

4. There is no legal requirement that an attested copy of the warrant should be posted at the Town House in Harpswell. The statute requirement is met when the attested copy of the warrant is posted in a public and conspicuous place in that town, as was done in the instant case.

5. Notice of a change of place of holding the annual meeting was not required to be posted at the Town House in Harpswell, or any other place than that mentioned in the call for the annual meeting at Red Men's Hall. The legality of a town meeting for the choice of officers is sufficiently proved by showing that it was notified and warned in due form, by those claiming to act as the legally qualified officers of the preceding year. *Tuttle* v. *Cary*, 7 Maine, 426. In *Stevens* v. *Foss*, 18 Maine, 19, this court held that "the selectmen of towns, being agents for the public, and discharging duties of a municipal character, may act by majorities." Citing *Damon* v. *Granby*, 2 Pick., 345; *Deming* v. *Houlton*, 64 Maine, 262. "Words

giving authority to three or more persons authorize a majority to act, when the enactment does not otherwise determine." R. S., Chap. 1, Sec. 6.

6. The constable who posted an attested copy of the warrant for the annual meeting to be held at Red Men's Hall was appointed by a majority of the selectmen, and qualified by taking the oath of office, and such qualification was duly recorded in the records of the town of Harpswell, and he entered at once upon what he supposed was his duty.. He posted an attested copy of the warrant in question, and made a proper return thereon. In addition to the irregularities claimed in relation to his appointment, it is urged that being a mail carrier, in federal employment, he was, under the law, and the regulations of the Post Office Department, ineligible for the office of constable within the State of Maine. It is unnecessary to discuss, and much less to decide, the various questions raised as to the legality of the appointment of the constable in the instant case, nor does the record furnish a safe basis for such action by the court. It is sufficient for the purposes of this case that the record discloses that the constable appointed by the two selectmen was in any. event an officer *de facto*. His acts as such *de facto* officer were, in the instance named, valid acts. His acts in that capacity are as valid so far as the public is concerned as the acts of an officer *de jure*. His title cannot be inquired into collaterally. "The precise definition of an officer *de facto*," observes Bigelow, Chief Justice, in *Fitchburg R. R. Company* v. *Grand Junction and Depot Company*, 1 Allen, 557, "is one who comes in by the forms of law and acts under a commission or election apparently valid, but in consequence of some illegality, incapacity, or want of qualification, is incapable of holding the office." Opinion of the Justices, 70 Maine, 560; *Brown* v. *Lunt*, 37 Maine, 428.; *Hooper* v. *Goodwin*, 48 Maine, 80; *Stuart* v. *Ellsworth*, 105 Maine, 527. The acts of an officer *de facto* are valid when they concern the public or the rights of third persons, and cannot be indirectly called in question, in a suit to which such officer is not a party. It is only in a suit against him that his right can be questioned. *Hooper* v. *Goodwin*, supra; *Bliss* v. *Day*, 68 Maine, 201; *Stuart* v. *Ellsworth*, 105 Maine, supra.

7. There is no statute requiring a constable to make a return to the town clerk. It is a custom generally observed so to do, but a failure to conform to that custom is not vital, and could not be

harmful in the instant case, as the warrant with the officer's return thereon was at the meeting, and appears of record, and no public interest was defeated by its retention by the constable. It further appears that the town clerk did not attend the town meeting at Red Men's Hall. Every town meeting, except the first meeting, and a meeting called by a justice of the peace, "shall be called by a warrant signed by the selectmen." R. S., Chap. 4, Sec. 2. "The warrant shall state the time and place at which the meeting shall be held, and in distinct articles shall state the business to be acted upon at such meeting, and no other business shall be there acted upon." R. S., Chap. 4, Sec. 5. "The warrant may be directed to any constable of the town, *or any person by name*, directing him to warn and notify all persons qualified to vote at such meeting, to assemble at the time and place appointed." R. S., Chap. 4, Sec. 6.

"Such meeting shall be notified by the person to whom the warrant is directed by posting an attested copy thereof in some public and conspicuous place in said town seven days before the meeting, unless the town has appointed, by vote in legal meeting, a different mode, which any town may do. In either case, the person who notifies the meeting shall make return on the warrant, stating the manner of notice, and the time when it was given." R. S., Chap. 4, Sec. 7. *Blaisdell* v. *Inhabitants of York*, 110 Maine, 514.

The eighth and last reason of appeal, that the selectmen called and held the town meeting at a place "far distant from the town house in Harpswell, without any action having been taken by the inhabitants authorizing such change of place," is in effect included in several of the reasons above dealt with.

The fixing of time and place of holding town meetings has been and is a statute duty of the selectmen. The *mode of calling* a meeting, as has been noted above, may be changed by a vote of the inhabitants in legal town meeting. Many of the statute duties of selectmen are left to their good judgment and discretion, and these include the naming of the time and place of calling town meetings.

The reason advanced as affecting the petitioners residing near the Town House, that Red Men's Hall is far distant therefrom, could very well be, and no doubt has been advanced by residents living on Orr's Island, only in reverse order,—that the Town House is far distant from an available building on that island, and barring the custom of a century, which was voluntarily interrupted before the

town meeting here involved, has equal force, in legal contemplation. The distance mentioned and the distribution of the inhabitants over its unusual territory has from the record, accounted for the election of one selectman from each of the larger islands, and one from Harpswell Neck, and for the appointment of two tax collectors to accommodate the east and west division of the town's larger subdivisions. So that the selectmen are called upon to use both judgment and discretion in the performance of their duties, as the law contemplates they should.

The meeting called by the justice of the peace. A town meeting, called by a justice of the peace, without an unreasonable refusal by the selectmen to call a meeting, is illegal. *Southard* v. *Inhabitants of Bradford,* 53 Maine, 389. The evidence discloses that the selectmen never refused, unreasonably or otherwise, to call a town meeting before they called the meeting at Red Men's Hall. There cannot be an unreasonable refusal without a request. *Sudbury* v. *Stearns,* 21 Pick., 148.

Perley A. Hackett, the chairman of the selectmen for 1922, and respondent in the first-named case, was present at the meeting of the selectmen when the warrant calling the meeting at Red Men's Hall was discussed. He took part in the discussion, and a very prominent part in writing the warrant, as above stated. They were in session the entire day. There was no undue haste. From his own testimony the session was harmonious, the proceedings regular, and the meeting closed with the business for the day accomplished. The meeting occurred on February 21st. On the twenty-second day of February the petition of ten or more voters was presented to him requesting the selectmen to call another town meeting at the same time, but at the Town House. He thereupon called the other selectmen by telephone and informed them of the existence of the petition and asked them "if they wished to take any action, and they said, 'no'."

The respondents rely upon the foregoing facts as the basis of the "unreasonable refusal" set up in their application to the justice of the peace, and urge the same in the brief of counsel. We cannot adopt the view thus urged. The selectmen by formal action had already called the annual meeting for 1923. So far as the record shows, the meeting and the act of issuing the warrant were in accordance with law. That there had been no refusal, unreasonable or

otherwise, before the twenty-second day of February, was brought out clearly by questions of the sitting Justice. Perley A. Hackett was asked by the court, "Q—When was that petition actually presented to you, was it on Wednesday the same day you made the warrant, or on the following day? A—The following day. Q—And although dated on February 21st, it was actually presented to you on the 22d? A—Yes, sir. Q—Up to the time of the presentation of this petition of ten voters, had the board of selectmen, of which you were a member and chairman of the Board, refused to call the town meeting,—I am not now referring to any particular place, whether Red Men's Hall or the town hall or any other place,—had the selectmen refused to call a town meeting? A—No, sir."

In view of this testimony, it clearly appears that there was no such unreasonable refusal to call a town meeting as is contemplated by the statute. This being so, the respondents have no legal standing in the instant case, and are therefore from the evidence without justification in the several claims set up by them.

> *Petition sustained with single bill*
> *of costs in each case.*
> *Decree of single Justice affirmed.*